UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE SANCHEZ | : | CIVIL CASE NO. 3:20-CV-01229(OAW) |
| V. | : | |
| KENNETH BUTRICKS, ET AL. | : | FEBRUARY 22, 2022 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

**I.     INTRODUCTION**

In accordance with the Federal Rules of Evidence, Defendants submit their memorandum of law and their Rule 56(a)1 statement. Attachment A.

**II.    PLAINTIFF'S COMPLAINT, ECF # 1**

Jorge Sanchez ("Plaintiff") filed this litigation pursuant to 42 U.S.C. § 1983 alleging that he was subjected to conditions of confinement that violated his constitutional rights of the Eighth Amendment and the American with Disabilities Act ("ADA"). ECF # 1. As set forth in its initial review of Plaintiff's complaint, this Court allowed Plaintiff's Eighth Amendment claims to proceed against Warden Kenneth Butricks ("Butricks"), ADA Coordinator Carbone ("Carbone") and Captain Rodriguez (Rodriguez") (collectively referred to as "Defendants") all employed by the State of Connecticut Department of Correction ("DOC") and assigned to Cheshire Correctional Institution ("Cheshire") in their individual capacities for money damages; and as to his

ADA claims, Plaintiff was allowed to proceed against the Defendants in their official capacity for money damages. ECF # 10, p. 14 of 16.

Plaintiff has a disability and walks with a cane due to an injury which he sustained prior to his incarceration. ECF # 1, ¶ 10. Because of this, Plaintiff is housed in a handicap/medical cell. Id.

On April 27, 2020, Plaintiff wrote to the maintenance supervisor about the leak in his cell. Id., ¶ 11. No response was ever received. Id., ¶ 12.

Plaintiff told Rodriguez, the unit manager of North Block 1, about the leak and asked if he could be moved to another cell until the problem was resolved. Id., ¶ 13. Rodriguez denied the request. Id., ¶ 14.

Plaintiff asserts that non-handicap inmates are moved to different cells under similar circumstances. Id., ¶ 17. Because the leak was unresolved, Plaintiff was exposed, daily, to risk of serious injury. Id., ¶ 18 – 19.

Three weeks after he submitted the request for repair to maintenance and told Rodriguez about the leak in his cell, on May 15, 2020, Sanchez slipped and fell in his cell. Id., ¶ 20. Plaintiff exacerbated his already disabled condition. Id.

The following day, Plaintiff wrote a request for reasonable accommodations, seeking access to another available handicap cell until the leak was fixed. Id., ¶ 21. Defendant Carbone ignored this request. Id., ¶ 22.

Three days after he fell, Plaintiff filed a Level 1 Grievance asking that the leak be fixed because he was afraid to fall again. Id., ¶ 23. Butricks denied the grievance as it was fixed on May 19, 2020. Id., ¶ 24, ¶ 27,

On May 22, 2020 Plaintiff appealed the denial. ¶ 25 – 26. The appeal was denied. Id.

Plaintiff seeks monetary damages.

### III. <u>LEGAL STANDARD OF REVIEW</u>

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015 ) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S. Ct. 2505. Accordingly, the moving party satisfies its burden under

Rule 56 "by showing ... that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks omitted). Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). [T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth "specific facts" demonstrating that there is "a genuine issue for trial.Fed. R. Civ. P. 56(e)." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson*, 477 U.S. at 250, 106 S. Ct. 2505) "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50, 106 S. Ct. 2505 (citations omitted).

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336

4

F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002)(citing *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

## IV. APPLICABLE LAW

### A. Eight Amendment – Conditions of Confinement

"To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Id.* The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (recognizing "food, clothing, shelter, medical care, and reasonable safety" as "basic human needs"). To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he faced a

substantial risk to his or her health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837." ECF # 10, p. 7 – 8.

An allegation of "mere negligen[t]" conduct is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Rather, the subjective element requires that the inmate allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

As the Second Circuit has recently confirmed, "slip-and-fall claims are seldom viewed as having constitutional dimension" and allegations of a slippery wet prison floor resulting in a plaintiff's fall do not raise an Eighth Amendment claim about an unsafe condition that violates contemporary standards of decency. *McCray v. Lee*, 963 F.3d 110, 115 (2d Cir. 2020); *id.* at 120 ("As the district court noted, McCray's Complaint did not make any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor."); *see also Martinez v. Schriro*, No. 14- CV-3965, 2017 WL 87049, at *5 (S.D.N.Y. Jan. 9, 2017) ("As courts in this circuit have regularly found, wet floor conditions that cause a prisoner to slip and fall do not constitute an Eighth Amendment violation.") (collecting cases); *Jennings v. Horn*, No. 05-CV-9435 (SAS), 2007 WL 2265574, at *5 (S.D.N.Y. Aug. 7, 2007) (accumulation of water on cell floor did not "objectively violate contemporary standards of decency" (internal quotation marks

omitted)); compare *See Fredricks v. City of N.Y.*, No. 12-CV-3734 (AT), 2014 WL 3875181, at *5-6 (S.D.N.Y. July 23, 2014) (concluding that plaintiff with a known disability who was subjected to slippery floors stated a constitutional claim, and collecting cases). Id.

### B. The ADA Claim

To establish a violation of Title II of the ADA, a plaintiff must show "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir. 2003) (cleaned up). State prisons qualify as public entities under the ADA. *See PennsylvaniaDep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also* 28 C.F.R. § Pt. 35, App. B (2011) ("[T]itle II applies to anything a public entity does."). "A individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Id., p. 10

### C. Personal Involvement

It is a well-established principle that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Pelletier*, 2007WL 685181, at *6 (alteration in original); *see also Wright*

*v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Murphy v. State of Conn., Dep't of Public Health,* 3:04CV976RNC, 2006WL 908435, at *2 (D. Conn.Mar. 30, 2006) ("[A] suit for deliberate indifference to a serious medical need cannot be maintained against a defendant who has no role in the provision of medical care.").

In 1995, the Second Circuit determined that personal involvement of a supervisory official may be shown by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

After 2009, however, the impact of *Ashcroft v. Iqbal,* 556U.S. 662 (2009), on the *Colon* factors was unclear. *See Grullon v. City of New Haven,* 720 F.3d 133, 139 (2dCir. 2013) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but declining to specifically address the issue); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has ... engendered conflict within our Circuit about the continuing

vitality of the supervisory liability test set forth in *Colon*."); *Johnson v. White*, No. 9:14–cv–00715 (MAD)(DJS), 2015WL 6449126, at *4 n. 2 (N.D.N.Y. Oct. 23, 2015) (noting that the Second Circuit had yet to decide the impact of *Iqbal* on *Colon*); *see also Koehl v. Bernstein,* No. 10 Civ. 3808(SHS)(GWG), 2011WL 2436817, at *9 (S.D.N.Y. June 17, 2011) (noting that in *Iqbal,* the Supreme Court "explicitly rejected the argument that[] 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution'" (quoting *Iqbal,* 556 U.S. at 677)). In December 2020, the Second Circuit clarified the standard for personal involvement of supervisory officials in a Section 1983 action. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

In *Tangreti*, a counselor supervisor in a prison "argue[d] on appeal that she [wa]s immune from suit under the doctrine of qualified immunity because her actions did not violate a statutory or constitutional right that was clearly established at the time of the challenged conduct," specifically "that her liability as a supervisor of the [prison] [wa]s not clearly established." *Id.* at 614-15 (alterations and internal quotation marks omitted).

Because under *Iqbal,* "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," 556 U.S. at 676, the Second Circuit held that "for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an

9

inmate and disregarded it." *Tangreti*, 983 F.3d at 616 (citing *Farmer*, 511 U.S. at 837). Thus, "there is no special rule for supervisory liability." *Id.* at 618. "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary" and "[t]he violation must be established against the supervisory official directly." *Id.* (first alteration in original).

V.   **LEGAL ARGUMENT**

Defendants submit that there is an absence of evidence to support Plaintiff's claim that each violated his rights under the Eighth Amendment and the ADA. Accordingly, no reasonable jury could return a verdict for the Plaintiff.

First, for purposes of this motion only and as this Court analyzed in its Initial Review Order, Defendants concede that Plaintiff has met the objective element of an Eighth Amendment claim. However, Plaintiff cannot meet the subjective element – that the defendants possessed culpable intent. This is because there is no evidence that Plaintiff can produce to dispute that Rodriguez was no longer assigned to Plaintiff's housing unit when the leak began and when he fell.  Rule 56(a)1 ("R56"), ¶ 43, compare ECF # 1, ¶ 14. Plaintiff cannot produce evidence that Carbone knew that he faced a substantial risk to his safety and disregarded that risk by failing to take corrective action. R56, ¶ 27 – 29. When Plaintiff stopped Carbone in the hallway and informed Carbone about a leak in his cell, Carbone could not offer him reasonable accommodations as he

no longer held a position that could assist in a cell change until the leak was fixed. Carbone instructed Plaintiff to contact the new coordinator. Id. Not until the day after he fell did Plaintiff submit such a request to the new ADA Coordinator. ECF # 1, p. 17. At most, Carbone's conduct is negligent and not actionable under a § 1983 claim. With respect to Butricks, Plaintiff is unable to provide any evidence that he wrote this warden about the leak <u>prior to his fall</u>. R56, ¶ 12, compare to ECF # 1, p. 12. Butricks acknowledged he toured the facility and interacted with inmates who often sought him out to discuss various issues. R56, ¶ 7 – 8. Had Butricks learned of this leak during a tour, he had several options available to him to ensure Plaintiff's safety. R56, ¶ 8. When Butricks did finally learn of the fall because of the leak that had not been fixed, he took immediate action and had the issue investigated. R56, ¶ 13 – 16. Because Plaintiff did not avail himself of administrative remedies nor communicated directly to Butricks about the cell conditions, Butricks was unable to ensure his safety before Plaintiff fell on May 15, 2020. This situation may have been prevented had Plaintiff simply exhausted available remedies with maintenance when "no response" was received, ECF # 1, ¶ 12, or immediately contacted the new ADA Coordinator as instructed to do so by Carbone. ECF # 1, p. 14. One thing is clear -- Sanchez did communicate the leak to someone who could help him and that was Counselor Rogers, the new unit manager of North Block. There is uncontradicted evidence that Rogers submitted two work orders to maintenance to address the leak in Sanchez's cell. R56, ¶ 61 -62.

Because Plaintiff in unable to meet the subjective element to state a claim of deliberate indifference to his safety due to the conditions of his confinement, Defendants move this Court to grant summary judgment in their favor.

As for the claim brought under the ADA, for purposes of this brief, Defendants concede that Plaintiff is a qualified individual with a disability. Defendants submit, however, that the remaining criteria has not and cannot be met. Plaintiff baldly concludes, sans evidence, that non-handicap prisoners "under the same circumstances are moved to safe usable cells upon request, the same rule does not apply to prisoners in plaintiff's condition." ECF # 1, ¶ 17. Carbone was no longer ADA Coordinator when Plaintiff told him about a leak in his cell and could not assist Plaintiff's in a reasonable accommodation. Carbone instructed Plaintiff to contact the new ADA Coordinator, the individual who could assist Plaintiff in a cell change. Arguably, Carbone could have contacted the new ADA Coordinator to discuss the issue; again, his conduct at most is negligent. Rodriguez was no longer in the unit when the leak began and therefore could not have offered any assistance in arranging for a cell change. There is evidence, however, that the new unit manager, Counselor Rogers, took immediate action and submitted two work orders for the repair of the leak. There is no evidence Plaintiff submitted a request to maintenance, but his own self-serving statement and a copy attached to the complaint. There is absolutely no evidence Plaintiff availed himself of administrative remedies by submitting a Level 1 grievance when maintenance did not

respond to his request. Nor is there any evidence that Butricks had been made aware of the condition of Plaintiff's cell other than that which is alleged in the complaint. This is because there is no evidence to support Plaintiff's claim that Butricks knew of the situation and failed to take action to ensure his safety.

Because Plaintiff cannot meet the requirements to succeed on the Title II of the ADA claim, Defendants move this Court to grant summary judgment in their favor.

Lastly, Plaintiff is unable to prove that the Defendants disregarded the substantial risk of serious harm that is required to succeed on a claim of supervisory liability. Rodriguez was no longer in the housing unit when the leak was noticed nor when Plaintiff slipped and fell. Consequently, Plaintiff is unable to submit evidence that Rodriguez disregarded the substantial risk of serious harm to succeed on this claim against him. Carbone was no longer the ADA Coordinator when approached by Sanchez who informed him about a leak in the cell. Carbone instructed Plaintiff to contact the new coordinator who could provide Plaintiff with reasonable accommodations until the leak was fixed. The evidence submitted indicates Plaintiff did not make such a request until after he fell on May 16, 2020, ECF # 1, ¶ 21, see also page 17; Carbone was not the ADA Coordinator at that time. As a result, Plaintiff is unable to provide evidence that Carbone disregarded a substantial risk of serious harm to succeed on the claim against him. Butricks was not aware of the leak until after

Plaintiff slipped and fell. There is no evidence that can be produced by Plaintiff to prove otherwise.

Thus, Defendants move this Court to grant summary judgment in their favor as there is no evidence of personal involvement for supervisory liability to enter against them.

## VI.     **CONCLUSION**

WHEREFORE, based on the reasons set forth above, Defendants move this Court to grant summary judgment in their favor.

> DEFENDANTS,
> Butricks, Carbone and Rodriguez
>
> WILLIAM TONG
> ATTORNEY GENERAL
>
> BY: */s/ DeAnn S. Varunes*
> DeAnn S. Varunes
> Fed. Bar No. ct25903
> Assistant Attorney General
> Office of the Attorney General
> McKenzie Hall
> 110 Sherman Street
> Hartford, CT 06105
> Tel: (860) 808-5450
> Fax No. (860) 808-5591
> E-mail: deann.varunes@ct.gov

## **CERTIFICATION**

I hereby certify that on February 22, 2022 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/DeAnn S. Varunes*
DeAnn S. Varunes
Assistant Attorney General