# ATTACHMENT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE SANCHEZ | : | CIVIL CASE NO. 3:20-CV-01229(OAW) |
| | : | |
| V. | : | |
| | : | |
| KENNETH BUTRICKS, ET AL. | : | FEBRUARY 22, 2022 |

## **LOCAL RULE 56(a)(1) STATEMENT**

Pursuant to Local Rule of Civil Procedure 56(a)(1)(c), Defendants Butricks, Carbone and Rodriguez submit this statement of undisputed material facts in support of their motion for summary judgment.

1. Jorge Sanchez ("Plaintiff") was re-admitted into DOC custody on June 8, 1994 and sentenced June 14, 1996. Attachment B, ¶ 3.

2. On April 27, 2020, Plaintiff was housed at Cheshire Correctional Institution, where he remains incarcerated as of this declaration. Attachment B, ¶ 4.

3. Between January 1992 and October 2020, Defendant Kenneth Butricks ("Butricks") was employed by the State of Connecticut Department of Correction (DOC). Attachment C, ¶ 2.

4. On October 1, 2020, Butricks retired from his employment as Warden of Cheshire Correction Institution by the DOC. Attachment C, ¶ 3.

5. Butricks held the position of Correctional Officer, then promoted to Lieutenant in 1997, promoted to Captain in 2001, promoted to Deputy Warden in 2009

and finally promoted to Warden of Bridgeport Correctional Institution in 2017, then Warden of Manson Youth 2018 and then Cheshire Correctional Institution (Cheshire) in 2019. Attachment C, ¶ 4.

6. As Warden, Butricks toured Cheshire and interacted with all inmates who sought him out to talk about a myriad of issues ranging from conditions of confinement to need for medical care. Attachment C, ¶ 5.

7. All inmates can file requests and grievances that enable custody to respond by resolving an issue first without further incident. Attachment C, ¶ 17.

8. Because Butricks toured the housing units in Cheshire, Sanchez had access and opportunity to inform Butricks of the condition of the cell so that Butricks could have acted to have the issue addressed by either moving Sanchez to another cell or having the water shut off in the cell until the leak was repaired. Attachment C, ¶ 9, ¶ 10.

9. Had Sanchez spoken to Butricks during a tour, Butricks would have gone to the cell and visually inspected the problem. Attachment C, ¶ 10.

10. Butricks then would have instructed the unit manager to submit a request for repair or called the maintenance department on his own. Attachment C, ¶ 10.

11. Butricks does not have an independent recollection of Sanchez speaking to me about the leak in the cell. Attachment C, ¶ 11.

12. Butricks does not have any written communication from Sanchez about the leak. Attachment C, ¶ 12.

13. Butricks acknowledges having received an Inmate Administrative Remedies Form, also known as a Level 1 grievance, on or about May 19, 2020, in which Sanchez states even though he informed others of a leak in his cell, nothing was done and as a result, he slipped and fell. Attachment C, ¶ 15.

14. In the Level 1 grievance, Sanchez requested that the leak be fixed "before something else happens to me." Attachment C, ¶ 15.

15. Butricks received the Level 1 grievance 4 days after Sanchez slipped and fell on water in his cell. Attachment C, ¶ 15.

16. Because the leak was fixed by the time Butricks received the Level 1 grievance, Butricks upheld the Level 1 grievance. Attachment C, ¶ 15.

17. Butricks was unaware that Sanchez appealed the disposition of the grievance that was upheld. Attachment C, ¶ 16.

18. As Sanchez walked with a cane, he could have submitted a request to the ADA Coordinator for reasonable accommodations at any time prior to May 15, 2020, the date Sanchez alleges he fell on water from the leak in his cell. Attachment C, ¶ 20.

19. Eric Carbone ("Carbone") has been employed by the DOC since 2007. Attachment D, ¶ 2.

20. Carbone currently hold position of Counselor Supervisor and is assigned to MacDougall-Walker Correctional Institution. Attachment D, ¶ 3.

21. In 2020, Carbone held position of ADA Coordinator and Counselor Supervisor of North Block 1 at Cheshire. Attachment D, ¶ 6.

22. Carbone knew that Sanchez walked with a cane due an injury suffered prior to incarceration. Attachment D, ¶ 8.

23. Even though Carbone was the ADA Coordinator at Cheshire, he was unaware that Sanchez had a qualifying disability as required under the ADA, nor was Carbone informed that Sanchez required reasonable accommodations. Attachment D, ¶ 9.

24. As ADA Coordinator, Carbone was aware that Cheshire had several cells in which an inmate would be housed to accommodate the use of a walker or a cane. Attachment D, ¶ 10.

25. These cells, located on the first floor of the housing units at Cheshire, housed one inmate, were larger in dimension and had a higher toilet seat. Attachment D, ¶ 10.

26. Carbone was reassigned to a different housing unit sometime in March 2020. Attachment D, ¶ 11.

27. Carbone no longer held position of ADA Coordinator at Cheshire in March/April 2020. Attachment D, ¶ 12.

28. After a new ADA Coordinator was appointed, Sanchez approached Carbone in the hallway and informed him of the leak in the cell and the need for reasonable accommodations. Attachment D, ¶ 14.

29. Carbone specifically recalls having informed Sanchez that a new ADA Coordinator was appointed and instructed Sanchez to contact the new person to address his needs. Attachment D, ¶ 14.

30. Carbone does not recall Sanchez being anxious about the leak, nor that the leak was considered by Sanchez to be major. Attachment D, ¶ 15.

31. Had Carbon been led to believe the leak was major, he would have contacted the Unit Manager and requested that a work order be submitted and spoken with the ADA Coordinator to determine whether alternative reasonable accommodations could be provided to Sanchez until the leak was repaired. Attachment D, ¶ 15.

32. When Sanchez filed a Request for Reasonable Accommodations on May 16, 2020, Carbone was no longer the ADA Coordinator at Cheshire and, as a result, was unaware of such a request having been filed. Attachment D, ¶ 16.

33. Israel Rodriguez ("Rodriguez") has been employed by the DOC since December 2005. Attachment E, ¶ 2.

34. Rodriguez was promoted from Correction Officer to Lieutenant to Captain, which was achieved in July 2018. Attachment E, ¶ 3.

35. Rodriguez has been assigned to Cheshire since 2019. Attachment E, ¶ 4.

36. In January 2020, Rodriguez held position of unit manager in North Block 1 housing unit, which is a unit where general population inmates are housed. Attachment E, ¶ 5.

37. North Block 1 did have a designated cell in which an inmate with a walker or other assistive mechanical device could be housed alone. Attachment E, ¶ 6.

38. This specific cell was larger in dimension and contained a higher toilet seat. Attachment E, ¶ 6.

39. When unit manager in North Block, Rodriguez learned that Sanchez occupied this type of cell. Attachment E, ¶ 7.

40. While unit manager in North Block 1, Rodriguez knew that Sanchez walked with a cane. Attachment E, ¶ 8.

41. As unit manager, Rodriguez would have been informed by the facility ADA Coordinator that Sanchez had a qualifying disability under the ADA. Attachment E, ¶ 9.

42. Rodriguez does not recall ever having been informed that Sanchez required accommodations for a qualifying disability under the ADA. Attachment E, ¶ 10.

43. In April 2020, Rodriguez was no longer assigned to the North Block 1 as unit manager. Attachment E, ¶ 13.

44. Had Rodriguez been aware of such a leak when unit manager in North Block 1, he would have submitted a work order as he had previously done on January 14, 2020 for a leak in Sanchez's cell. Attachment E, ¶ 15 – 17.

45.     Rodriguez was unaware of a leak in North Block 1 Cell 111 until Sanchez had him served with this lawsuit. Attachment E, ¶ 20.

46.     Derek Wayner ("Wayner") was the facility maintenance supervisor of Cheshire Correctional Institution. Attachment F, ¶ 2.

47.     The Cheshire Reformatory was established by the Connecticut General Assembly in 1909 and opened in 1913 after three years of construction carried out by inmates from the State Prison in Wethersfield. Attachment F, ¶ 3.

48.     It was designed as a reformatory for male offenders ages 16-24, with the intention of separating these offenders from the adult prison population. Attachment F, ¶ 3.

49.     In 1982 the facility was designated for adult males. Attachment F, ¶ 3.

50.     In 1993, the galleys closed and the new North and South Blocks were opened. Attachment F, ¶ 3.

51.     Today it is it known as Cheshire Correctional Institution. Attachment F, ¶ 3.

52.     Because of its age, the facility has experienced maintenance issues, some of which are the result of leaky pipes and seals on toilets. Attachment F, ¶ 4.

53.     However, in 2020, a complete changeover of the plumbing was performed by Department of Correction maintenance in Cell 111. Attachment F, ¶ 4.

54.     Within each housing unit at Cheshire there is a cell that has a higher toilet.

7

55. Wayner only becomes aware of maintenance problems in the units upon receipt of a request submitted by a member of custody in which a complaint is made for a repair. Attachment F, ¶ 7.

56. Upon receipt of a repair request, a work order is generated and includes the date and time the request was submitted, the location of where the requested repair, the date the work order was assigned and the date the repair was completed. Attachment F, ¶ 8.

57. Wayner located all work orders associated with the presence of a water leak in Cell 111 for the period between January 2020 through present and located a total of 5. Attachment F, ¶ 9.

58. first work order found was for a leaking toilet and dated January 14, 2020. Attachment F, ¶ 10. The work order was submitted by Captain Rodriguez. Attachment F, ¶ 10. The repair was completed the following day. Attachment F, ¶ 10.

59. The second work order was submitted by Counselor Bethke on January 15, 2020 for water leaking from the tank mounted to the wall behind the toilet into the cell. Attachment F, ¶ 11. Wayner is not able to verify whether this work order was a duplicate of the one submitted by Captain Rodriguez as often times multiple work orders would be received for the same problem by different staff members within the unit. Attachment F, ¶ 11. The work was completed on January 17, 2020. Attachment F, ¶ 11.

60. The third work order was submitted on January 23, 2020 by Counselor Bethke or repair for a leak coming from the tank on the wall. Attachment F, ¶ 12. The work was completed by January 29, 2020. Attachment F, ¶ 12.

61. The fourth work order was submitted on May 12, 2020 by Counselor Rogers because the toilet and sink were leaking with usage/flush. Attachment F, ¶ 13. Even though the document reflects the work was completed on October 29, 2020, this date is incorrect. Attachment F, ¶ 13. Sometimes, work orders are completed but not closed out. Attachment F, ¶ 13. This was the case here.

62. The fifth and final work order was submitted on May 18, 2020 by Counselor Rogers. Attachment F, ¶ 13. The work order indicates that "this has been an ongoing issue for while. It was fixed temporarily but started back leaking the same day." Attachment F, ¶ 13. This notation allows Wayner to confirm that the work order generated on May 12 was actually completed by May 13, 2020 though not closed out until October 29, 2020. Attachment F, ¶ 13.

63. The work order generated on May 18 was completed on May 20, 2020. Attachment F, ¶ 13.

DEFENDANTS,
Butricks, Carbone and Rodriguez

WILLIAM TONG
ATTORNEY GENERAL


BY: */s/DeAnn S. Varunes*
DeAnn S. Varunes
Fed. Bar No. ct25903
Assistant Attorney General
Office of the Attorney General
McKenzie Hall
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Fax No. (860) 808-5591
E-mail: deann.varunes@ct.gov


## **CERTIFICATION**

I hereby certify that on February 22, 2022 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/DeAnn S. Varunes*
DeAnn S. Varunes
Assistant Attorney General