**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JORGE SANCHEZ | : | CIVIL NO. 3:20-CV-01229(VAB) |
| V. | : | |
| KENNETH BUTRICKS, ET AL. | : | FEBRUARY 12, 2025 |

**DEFENDANTS' COMPLIANCE WITH ORDER # 60**

## I. INTRODUCTION

Defendants comply with this Court's Order dated November 14, 2024, ECF # 60, and submit this brief[1] in support of their argument that: 1) Defendants alleged conduct did not violate Title II of the ADA; 2) Defendants alleged conduct did not violate the Fourteenth Amendment; 3) there are no genuine issues of material facts as to whom Plaintiff told about the maintenance issue in his cell and when he did so; 4) Defendants did not deny Plaintiff the opportunity to participate in or benefit from Department of Correction services, programs or activities nor did it otherwise discriminate against Plaintiff by reason of his disability; and 5) Defendants are entitled to Eleventh Amendment immunity on Plaintiff's claim for money damages under Title II of the Americans with Disabilities Act (ADA).

## II. PLAINTIFF'S COMPLAINT

*Pro se* inmate Plaintiff Jorge Sanchez (Plaintiff) filed a civil rights Complaint under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment to the United States Constitution and ADA against Department of Correction (DOC) Defendants Warden Kenneth Butricks

[1] Throughout this brief, Defendants refer to and rely on their Rule 56(a)(1) Statement of Fact and their declarations submitted on February 22, 2022. ECF # 31-1 – 31-6.

(Butricks), Captain Israel Rodriguez (Rodriguez), ADA Coordinator Eric Carbone (Carbone), all assigned to the Cheshire Correctional Institution in 2020. ECF # 1.

**A. Qualified Individual with a Disability**

Plaintiff alleges he is a qualified individual with a disability; that he walks with a walking cane, and since his incarceration, has been assigned a handicap-accessible cell. *Id* ¶ 10.

**B. Inmate Request Form (CN9601)**

On April 27, 2020, while living in a handicap-accessible cell, Plaintiff's sink/toilet began to leak. *Id.,* ¶ 11. Plaintiff wrote an inmate request addressed to Supervisor Maintenance Wayner asking for the leak to be fixed. *Id.* ¶ 12; *see* ECF # 1, p. 14. Plaintiff asserts no response was received. *Id*.

**C. Oral Request For Reasonable Accommodations**

On April 27, 2020, Plaintiff alleges he asked Rodriguez to be moved to another handicap cell until the leak in his was fixed. *Id.* ¶ 13 – 14. According to Plaintiff, Rodriguez had the authority to move him to a safer cell and have his cell fixed, as he did several times upon requests from non-disabled prisoners. *Id.,* ¶ 30. Plaintiff states Rodriguez denied his request without explanation. *Id,* ¶ 14. Because his request for reasonable accommodation was effectively denied, Plaintiff alleges he was then denied participation in any out-of-cell services without being exposed to a serious risk of injury when he left his cell, which he left approximately twice a day for medical reasons. *Id.* ¶ 18 - 19.

**D. <u>Slip and Fall</u>**

For three weeks, Plaintiff declares he was forced to live with the leak and was exposed to risk of injury each time he left his cell to participate in services, programs and activities offered by DOC. *Id.,* ¶ 20. On May 15, 2020, Plaintiff slipped and fell on a pool of water while attempting to leave his cell to receive daily medication. *Id*., ¶ 20[2]. The fall exacerbated his already deteriorating condition. *Id.*

**E. <u>Form CN101902-Request for Reasonable Accommodations</u>**

On May 16, 2020, Plaintiff sought a reasonable accommodation to "have other handicap accessible cells available when one breaks down." *Id.* ¶ 21; *see* ECF # 1, p. 17. Not having additional handicap cells available, according to Plaintiff, was clearly "discriminatory towards disabled persons because we can't be moved to any cell unlike non-disabled prisoners with the same issue there is always an available cell they can use." *Id.,* p. 17.

Requests for Reasonable Accommodations (Request) are sent to the facility ADA Coordinator. ECF # 1, ¶ 8[3]. Plaintiff alleges when Carbone ignored the Request, he did so: a) having knowledge of Plaintiff's disabilities and needed accommodations; b) having been authorized to answer each request for reasonable accommodations; and c) having the authority to determine whether a reasonable accommodation was needed. *Id.,* ¶ 31. Plaintiff surmises that when Carbone blatantly ignored the Request, he displayed "gross discrimination toward plaintiff

---

[2] Plaintiff also claims injury when he got up to use the toilet, Id., p.12, and when he attempted to attend recreation. Id., p.17,

[3] Department of Correction Administrative Directive 10.19, entitled Americans with Disabilities effective date 8/1/2014 provides that; The Department of Correction shall make reasonable accommodations or modifications to allow qualified inmate with disabilities the same opportunities as non-disabled inmates…" See Attachment A.

despite his reported injuries . . . and that Carbone's willful ignoring of plaintiff's request is why plaintiff [was] faced with a future risk of more harm if his cell [became] unsafe to live in." *Id.*

**F. <u>Form CN9602: Inmate Administrative Remedy Form</u>**

On May 18, 2020, Plaintiff filed an Inmate Administrative Remedy Form, (IARF) (CN9602) in accordance with Administrative Directive 9.6[4]. Plaintiff asserts that he wrote and told everyone about the condition of his toilet even though he asked for it to be fixed. *Id.* ¶ 23; *see* ECF # 1, p. 12. In the IARF, Plaintiff asks the leak to be fixed as he had slipped and fell. *Id.*

**G. <u>DOC fixed the leak</u>**

On May 19, 2020, prison officials fixed Plaintiff's sink/toilet. *Id.* ¶ 27.

**H. <u>Response Received to Inmate Request Form</u>**

On May 22, 2020, Plaintiff received a response to the IARF on May 18, 2022. *Id.,* ¶ 24. Plaintiff claims the IARF was denied. *Id*. Plaintiff alleges Butricks, who denied his request, had a "responsibility to establish and enforce Directives to protect the safety of each prisoner without discrimination." *Id.,* ¶ 32. And, according to Plaintiff, Butricks denied the grieved condition "knowingly" in that Butricks failed to take action or even steps to ensure plaintiff's health and safety aren't at risk in the future." *Id.*

[4] Department of Correction Administrative Directive 9.6, entitled Inmate Administrative Remedies, effective date 8/15/2013 provides that: The Department of Correction shall provide a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority. See Attachment B. The Inmate Administrative Remedies Process enables the Department to identify individual and systemic problems, to resolve legitimate complaints in a timely manner and to facilitate the accomplishment of its mission.

**I. Form CN9604: Inmate Grievance Appeal Form-Levels 2/3**

Unsatisfied with the IARF response, in accordance with Administrative Directive 9.6, Plaintiff filed Inmate Grievance Appeal Form – Levels 2/3. (IGAF) (CN9604) In it, Plaintiff alleges Butrick's response did not address his condition of confinement issue nor his complaint that "staff unprofessional unprompt attention to hazardous and dangerous constitutes deliberate indifference to this inmates safety, being that I have a disability." ECF # 1, p. 18.

**J. Form CN9604: Appeal of Level 2 Decision to Level 3**

Having not received a timely response to the IGAF, and in accordance with Administrative Directive 9.6, Plaintiff filed a Level 3 appeal. *See* ECF # 1, p. 19 – 20.[5] On July 15, 2020, the IGAF was denied because Plaintiff was "appealing a level one grievance regarding physical conditions (leaking toilet) at Cheshire C.l The response given by Warden Butricks was appropriate. Additionally, your medical concerns were addressed, you were seen by medical on 5/18/20 for a reported fall in your cell. Your level 2 grievance appeal is denied." *Id*.

**K. Relief Sought**

Plaintiff seeks compensatory damages for physical and emotional injuries and punitive damages. ECF # 1, p. 9. Plaintiff also seeks an injunction that would order DOC to establish a "directive in accordance with the American with Disabilities Act to make handicap cells available so handicap prisoner can be moved into them if or when their cell becomes unsafe to live in." *Id.*

---

[5] On July 13, 2020, a DOC designee completed Form CN9605, advising Plaintiff that additional time was required to issue a response to his Appeal. ECF # 1, p. 20.

## III. <u>PROCEDURAL HISTORY</u>

In its review of Plaintiff Complaint on April 2, 2021, the court allowed Plaintiff to pursue his Eighth Amendment claim—alleging that water on the floor exposed him to a substantial risk of serious harm—against Butricks, Carbone, and Rodriguez. ECF #10, p.10. It also allowed Plaintiff to proceed against the defendants, in their official capacities for money damages, on his ADA claim arising from the alleged refusal to provide a reasonable accommodation in the form of a different handicap-accessible cell. ECF # 10, p. 14. The court found that Plaintiff's allegations did "not suggest disparate treatment or disparate impact. *Id*., p.11. It found, however, that Plaintiff alleged "Defendants discriminated against him by refusing to provide him with a reasonable accommodation to move him to a new handicap cell during the three weeks when his sink/toilet leaked water on the floor." *Id.* Next, the court left the application of sovereign immunity for later. *Id*.

Finally, Plaintiff's request for injunctive relief was dismissed as there was no allegation of an ongoing violation to support a claim against the Defendants in their official capacities for prospective injunctive relief under either § 1983 or the ADA. *Id.*, p. 14, ¶ 1.

On September 23, 2022, the District Court granted defendants summary judgment on both the Eighth Amendment and the ADA. In doing so, on the Eighth, the court condluded that no reasonable juror could find the Defendants were deliberately indifferent to Plaintiff's health and safety-largely because none of the Defendants knew about, nor aware of the leak, nor in a position to fix the leak. *Id*., pp. 5-7.

As to the ADA claim, the court concluded there was nothing in the record that indicated the deprivation resulted from discriminatory animus. *Id*., p.8. Nor could it infer discrimination from the individual Defendants' actions and there was "no other history of discrimination against plaintiff. *Id*. The failure "to address the leak is more likely attributable to unintentional negligence than to discriminate," the court concluded. *Id*. ECF # 42.

Plaintiff timely appealed. He does not challenge the District Court's Eighth Amendment ruling. *See Sanchez v. Butricks,* Case No. 22-2923. Rather, Plaintiff argues the District Court erred in requiring him to show evidence of discriminatory animus on a failure to accommodate claim under the ADA because he created a fact issue on whether his disability was reasonably accommodated when, as someone with a mobility impairment, was left in a slippery cell with sitting water for an extended period, resulting in a hard fall. *Sanchez*, No. 22-2923, ECF # 60, pp. 8 – 9. Plaintiff further argued that Defendants lack of personal involvement is the incorrect measure of whether the Department could be liable for DOC's failure to accommodate his disability under the ADA. *Id.,* pp. 10 – 11. Finally, Plaintiff argued that Defendants failed to demonstrate they were entitled to summary judgment on sovereign immunity as it was not argued in their brief. *Id*., pp.9-12. Finally, Plaintiff argued that a fact question remained on whether Defendants were deliberately indifferent to a risk of disability discrimination. *Id.,* pp. 12 – 13.

Defendants-Appellees argued that the district court correctly granted summary judgment as Plaintiff did not even claim a material dispute about discriminatory animus and Plaintiff never met the elements for an ADA violation to proceed against them. *Sanchez*, ECF # 74, p. 8. Defendants-Appellees argued the Eleventh Amendment protected DOC from monetary damages

and it would only be abrogated if Plaintiff proved discriminatory animus. *Id*., pp.11-22. Finally, Defendants-Appellees argued that they are protected by Eleventh Amendment immunity for money damages as their conduct neither violated the ADA nor the Fourteenth Amendment, as required for Congress to abrogate this immunity. *Id*.

On July 1, 2024, the Second Circuit issued a summary order. *Sanchez v. Butricks, et al.,* Case #22-2923, ECF #97. In it, the Second Circuit vacated the court's ruling on Plaintiff's Title II claim and remanded the issue back to the district court for further proceedings to analyze Plaintiff's claim under the failure to accommodate theory, and for it to determine whether Plaintiff's claim for money damages under Title II survives summary judgment pending consideration of the question of state sovereign immunity. *Sanchez v. Butricks,* 22-292, ECF # 97, pp. 8 - 9.

On remand, the parties are ordered to brief the following:

1) Whether Congress (through its authority derived from §5 of the Fourteenth Amendment) abrogated Defendants' Eleventh Amendment sovereign immunity which otherwise would have insulated them from Plaintiff's reasonable accommodation claim brought under Title II of the Americans with Disabilities Act.
2) Which aspects of Defendants alleged conduct violated Title II;
3) To what extent such misconduct also violated the Fourteenth Amendment
4) Insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congresses purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.
5) Whether there is a factual dispute as to whom Plaintiff told about the maintenance issue in his cell, and when he did so; and
6) Whether Plaintiff was denied the opportunity to participate in or benefit from the prison's services, programs, or activities or whether the prison otherwise discriminated against him by reason of his disability.

(ECF #60.)

## IV. LEGAL STANDARD

Summary judgment may be granted only where there is no genuine dispute as to any material fact and the court finds that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Substantive law determines which facts are material. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) (citing *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995)).

The moving party bears the initial burden of establishing the legal basis for its motion and demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In doing so, they cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). The nonmoving party must present evidence that would allow a jury to find in its favor. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## V. THE LAW

### A. Americans with Disabilities Act (ADA)

In the Second Circuit, "a plaintiff . . . bears the burden of requesting an accommodation prior to bringing an ADA claim for its denial." *Walker v. City of New York*, 367 F. Supp. 3d 39, 51 (S.D.N.Y. 2019) (citing, in part, *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *42 U.S.C. § 12132*. To establish a violation of Title II of the ADA, a plaintiff must show "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v.*

*Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003)* (cleaned up). State prisons qualify as public entities under the ADA, *Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)*, and "[T]itle II applies to anything a public entity does." 28 C.F.R. § Pt. 35, App. B (2011).

"A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: 1) intentional discrimination (disparate treatment); 2) disparate impact; and 3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

"Discrimination under the third prong can include 'failure to make a reasonable accommodation' for the inmate." *McFadden v. Noeth*, 827 F. App'x 20, 28 (2d Cir. 2020) (summary order) (citation omitted); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (noting that . . . the ADA . . . "prohibit[s] discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations"), *corrected*, 511 F.3d 238 (2d Cir. 2004).

In examining a failure to reasonably accommodate claim, the Court asks "whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003)). A reasonable accommodation "need not be 'perfect' or the one 'most strongly preferred'" by the plaintiff, but it must be "effective." *Id.* (quoting *Dean*, 804 F.3d at 189).

"Determining the reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder." *Id.* at 72-73 (citation, brackets, and internal quotation marks omitted).

**B. <u>Fourteenth Amendment</u>**

The Fourteenth Amendment provides that States may neither "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Many rights that individuals have with respect to the federal government—including the Eighth Amendment right to be free from cruel and unusual punishments—have been incorporated against the States through the Fourteenth Amendment's due process clause. *See, e.g., Robinson v. Cal.*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962) (Eighth Amendment's prohibition against cruel and unusual punishment).

To state a deliberate indifference to health and safety claim under the Fourteenth Amendment, a plaintiff must allege facts in satisfaction of two prongs: (1) an "objective prong" showing that the plaintiff's condition of confinement posed an unreasonable risk of serious harm to the plaintiff, and (2) a "*mens rea* prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019).

Under the Fourteenth Amendment, a plaintiff must show something more than mere negligence to establish deliberate indifference. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). It is well settled that alleged constitutional violations brought under Section 1983 require more than allegations of negligence. *See Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002); *Hagans v.*

*Maher*, No. 18-cv-1917, 2022 U.S. Dist. LEXIS 176403, 2022 WL 4538561, at *7 (E.D.N.Y. Sept. 28, 2022); *Miller v. Cty. of Nassau*, No. 16-cv-584, 2018 U.S. Dist. LEXIS 56011, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018).

### C. <u>Eighth Amendment</u>

Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (cleaned up). Conditions that are harsh or restrictive do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for the offenses against society." *Rhodes v. Chapman*, 452 U.S. 337,347 (1981).

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. *See Farmer,* 511 U.S. at 834. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" of a life necessity or a human need or posed a substantial risk of serious harm to his health or safety. *Id*. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. See *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837.

Thus, an allegation of merely negligent conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). When evaluating a claim for failure to protect an inmate from harm or deliberate indifference to inmate safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act."*Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (cleaned up); *see Lenti v. Connecticut*, 2020 U.S. Dist. LEXIS 131189, *12-14.

## VI. LEGAL ARGUMENTS

### A. Whether Congress (through its authority derived from §5 of the Fourteenth Amendment) abrogated Defendants' Eleventh Amendment sovereign immunity which otherwise would have insulated them from Plaintiff's reasonable accommodation claim brought under Title II of the Americans with Disabilities Act.

The answer to this question remains unclear, and, therefore, due to the continued uncertainty of whether Congress abrogated Defendants' Eleventh Amendment sovereign immunity which otherwise would have insulated them from Plaintiff's reasonable accommodation claim brought under Title II of the Americans with Disabilities Act, Defendants submit they remain protected by Eleventh Amendment immunity from Plaintiff's reasonable accommodation claim for money damages brought under Title II of the Americans with Disabilities Act.

Under certain circumstances an inmate may assert a Title II ADA claim for money damages against a state actor in her official capacity. *See United States v. Georgia, 546 U.S. 151,*

*159, 126 S. Ct. 877, 163 l. Ed. 2d 650 (2006); see also Goonewardena v. New York, 475 F. Supp. 2d 310, 232, 326 (S.D.N.Y. 2007).* States enjoy sovereign immunity from suit pursuant to the Eleventh Amendment. Courts have interpreted the Eleventh Amendment to prohibit a citizen of a State from suing a State or its agencies for money damages in federal court; that prohibition "extends to damage actions against state employees acting in their official capacities." *Cole v. Goord* 2009 U.S. Dist. LEXIS 75580, 2009 WL 2601369 at *5 (S.D.N.Y Aug. 25, 2009) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *Pennhurst*, 465 U.S. at 98-99).

The Eleventh Amendment shields states and their employees— sued in their official capacities—from suit in federal courts. *Alabama v. Pugh*, 438 U.S. 781 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d. Cir. 2001) ("Insofar as *Garcia* is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY."). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"). Here, it is undisputed that each Defendant is considered a state agency protected by the Eleventh Amendment. *See Matagrano v. N.Y. State Depat. Of Corr. & Cmty. Supervision*, 2020 U.S. Dist. LEXIS 234149, at *46-47, 2020 WL 7338586, at *15.

Congress can abrogate Eleventh Amendment immunity–but only "when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks omitted). In this case, Congress wanted the ADA's Title II to abrogate Eleventh Amendment immunity—but that abrogation only works to the extent that the ADA represents a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. *Garcia*, 280 F.3d at 108; *United States v. Georgia,* 546 U.S. 151, 159 (2006). So, as a rule, Title II plaintiffs suing states cannot recover money damages for conduct that does not violate both the ADA and the Fourteenth Amendment. *Georgia,* 546 U.S. 159 ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates states sovereign immunity.")

In *Garcia*, the Second Circuit addressed the question of whether Congress had validly abrogated state sovereign immunity from claims for monetary damages under Title II of the ADA. *Garcia v. State University of N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98 (2d Cir. 2001). The Court held that "it is clear that the Congress fully intended to abrogate state sovereign immunity" from such claims, but that this purported abrogation was not valid because the enactment of Title II exceeded Congress's authority under Section 5 of the Fourteenth Amendment to enforce the protections afforded by that amendment's Equal Protection Clause. *Id.* at 108-10. However, the Court found that Title II could be rehabilitated by requiring "plaintiffs bringing such suits to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." *Id.* at 111. Recognizing that

"direct proof of [discriminatory animus or ill will] will often be lacking," the Court further held that to establish such animus, a plaintiff may rely on a burden-shifting technique similar to that adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), or a motivating-factor analysis similar to that set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-58, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). *Id.* at 112.

After *Garcia*, the Supreme Court decided *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), holding that Congress's abrogation of sovereign immunity under Title II was valid in the specific context of cases challenging barriers to courtroom accessibility. *Id.* at 531. It reasoned that in enacting Title II, Congress sought to enforce not only the Equal Protection Clause (as recognized in *Garcia*) but also "a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review," including rights under the Fourteenth Amendment's Due Process Clause. *Id.* at 522-23. In other words, the Supreme Court found that Title II was "not wholly premised on discrimination against the disabled that violates the Equal Protection Clause," arguably opening up the possibility of other avenues for Title II damages claims to clear the Eleventh Amendment hurdle besides the Equal Protection "discriminatory animus" test recognized in *Garcia*. *Bolmer v. Oliveira*, 594 F.3d 134, 147 (2d Cir. 2010).

Following *Lane*, the Supreme Court decided *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006), in which it held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. However, because

it was unclear whether the petitioner's amended complaint might assert Title II claims not premised on Fourteenth Amendment violations, and because the justices disagreed as to the scope of Congress's "prophylactic" authority to regulate conduct not itself barred by the Fourteenth Amendment, the Court remanded for the lower courts to determine, "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at 158-59. "Thus, *Georgia* explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194, 2015 U.S. App. LEXIS 17539.

The Second Circuit has not fully resolved the question of whether, or to what extent, *Garcia* remains valid in light of *Georgia*. In *Bolmer*, the Second Circuit held that "*Garcia* only applies to Title II claims based on Equal Protection," that "*Garcia* is not applicable when Congress's abrogation is supported by its enforcement of the substantive due process right not to be involuntarily committed absent a danger to self or others," and that "under *Georgia* and *Lane*, Congress validly abrogated states' Eleventh Amendment immunity where the same conduct by the defendant violated both Title II and substantive due process." 594 F.3d at 145-49. However, *Bolmer* did not address the standard for evaluating whether the Eleventh Amendment bars Title II damages claims based on conduct that does *not* independently implicate constitutional rights.

Later, in *Dean*, the Second Circuit recognized that "[c]ontinued uncertainty as to the vitality of *Garcia* has led to a divergence in the approaches adopted by district courts in this Circuit in their assessment of Congress's abrogation of sovereign immunity under Title II," but expressed "no position" as to the issue. *Dean,* 804 F.3d at 194-95.

In light of this "continued uncertainty," district courts have taken varying approaches to the continuing validity of *Garcia*. When determining whether Congress has validly abrogated states' sovereign immunity from Title II claims that do not independently implicate a constitutional violation, some courts have continued to apply *Garcia*'s "discriminatory animus or ill will" requirement. *See, e.g., Bobbit v. Marzan*, No. 16-cv-2042, 2020 U.S. Dist. LEXIS 172422, at *39, 2020 WL 5633000, at *13 (S.D.N.Y. Sept. 21, 2020) (stating that, when applying the third clause of the *Georgia* test, "[a]t a minimum, covered claims include those where the plaintiff makes 'a showing of discriminatory animus or ill will,' because in those cases discrimination in contravention of the ADA also threatens the rights protected by the Equal Protection Clause"); *Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 16-cv-2818, 2019 U.S. Dist. LEXIS 164527, at *26-27, 2019 WL 4688665, at *10 (S.D.N.Y. Sept. 25, 2019) ("Many courts in the Second Circuit have used the discriminatory animus or ill will test laid out in *Garcia* to inform its analysis of the third clause of the *Georgia* test . . . ."). Others have applied the three-part test articulated in *City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), to determine whether, for the particular Title II violation alleged, there is a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *See, e.g., Lenti v. Connecticut*, No. 20-cv-127, 2020 U.S. Dist. LEXIS

131189, at *21-31, 2020 WL 4275600, at *7-10 (D. Conn. July 24, 2020); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 322-24 (S.D.N.Y. 2007).

"Numerous courts evaluating Title II ADA claims by state prisoners have found that the prisoners' claims "fail[] the third step of the *City of Boerne* test because," in that context, Title II "is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Wilke*, 2014 U.S. Dist. LEXIS 174137, 2014 WL 7237019, at *7 (cleaned up) (quoting *City of Boerne*, 521 U.S. at 532); *see also Phelan v. Thomas*, 2017 U.S. Dist. LEXIS 17606, 2017 WL 519246, at *5 (N.D.N.Y. Feb. 8, 2017); *Baskerville*, 508 F. Supp. 2d at 506; *Belk v. Smith*, 2013 U.S. Dist. LEXIS 139584, 2013 WL 5430426, at *8-9 (M.D.N.C. Sept. 27, 2013). Some of those courts emphasize the broad scope of Title II of the ADA. *See, e.g., Wilke*, 2014 U.S. Dist. LEXIS 174137, 2014 WL 7237019, at *7 (noting that Title II's prophylactic demand for reasonable accommodation requires far more than does the Constitution" because it "prohibits far more state conduct and in many more areas of prison administration than conceivably necessary to enforce any relevant constitutional rights") (cleaned up). Many of those courts also point out that federal courts should be especially cautious before interfering with the administration of a State's prison system. *See, e.g., Belk*, 2013 U.S. Dist. LEXIS 139584, 2013 WL 5430426, at *8 (citing, *inter alia, Turner v. Safley*, 482 U.S. 78, 85, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Woodford v. Ngo*, 548 U.S. 81, 94, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006);*Preiser v. Rodriguez*, 411 U.S. 475, 491-92, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)); *Shaw v. Pa. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 217016, 2018 WL 6831148, at *6 (W.D. Pa. Dec. 28, 2018); *Meeks v. Schofield*, 10

F. Supp. 3d 774, 797 (M.D. Tenn. 2014); *see also Reynolds v. Cook*, 2020 U.S. Dist. LEXIS 40252, 2020 WL 1140885, at *13 (D. Conn. Mar. 9, 2020)." *Lenti v. Connecticut*, 2020 U.S. Dist. LEXIS 131189, *29-30.

Due to the continued uncertainty of whether Congress (through its authority derived from §5 of the Fourteenth Amendment) abrogated Defendants' Eleventh Amendment sovereign immunity which otherwise would have insulated them from Plaintiff's reasonable accommodation claim brought under Title II of the Americans with Disabilities Act, Defendants remain protected by Eleventh Amendment immunity from Plaintiff's reasonable accommodation claim for money damages brought under Title II of the Americans with Disabilities Act.

**B. <u>Which aspects of Defendants alleged conduct violated Title II.</u>**

No aspect of Defendants conduct violated Title II.

In his Complaint, however, Plaintiff claims on April 27, 2020, he put DOC on notice of his request for reasonable accommodations because he wrote to maintenance and spoke to Rodriguez, about being moved to another handicap cell until the leak in his was fixed. Because DOC failed to accommodate his request, Plaintiff proclaims Defendants violate the ADA.

Defendants do not dispute that Plaintiff is an individual with a qualifying disability. When DOC became aware of the need for reasonable accommodations, it provided Plaintiff with a walking cane and handicap-accessible cell. These reasonable accommodations enabled Plaintiff to participate in or benefit from DOC's services, programs, or activities and did not otherwise discriminate against him by reason of his disability.

Defendants assert that notice was not properly provided by Plaintiff to DOC so that a reasonable accommodation could be provided responsive to change in cell condition. *See Attachment A*. First, the inmate request to maintenance clearly does not request that DOC provide him with reasonable accommodation until the leak is fixed; nor does it make any reference that Plaintiff had a qualified disability and lived in a handicap-accessible cell. Plaintiff's request simply asks the leak to be fixed. Nor can a reasonable accommodation to move Plaintiff to another handicap cell until the leak is fixed be inferred so as DOC was on notice and could investigate whether a change in Plaintiff's current accommodation were to be made under the ADA.

Defendants do not dispute that an oral request can be made by a plaintiff for a reasonable accommodation, as set forth under Administrative Directive 10.19. Plaintiff claims such a request was made of DOC on April 27, 2020 when he spoke to Rodriguez. While this conversation is sufficient to make a reasonable accommodation, there is uncontroverted evidence that Rodriguez was assigned a different unit at Cheshire. Plaintiff admits the same in his Rule 56(a)(2) statement.

Finally, Defendants could not have violated Title II as Plaintiff only sought a reasonable accommodation AFTER he fell when Form CN101902 was filed. The untimely filing of a request for a reasonable accommodation did not allow for DOC to investigate Plaintiff's request and make a determination whether a modification to his present reasonable accommodation could be provided.

Based on the aforementioned, Defendants are entitled summary judgment for the conduct of the DOC did not violate Title II.

**C. <u>To what extent such misconduct also violated the Fourteenth Amendment</u>**

Title II plaintiffs suing states cannot recover money damages for conduct that does not violate both the ADA and the Fourteenth Amendment. Here, the only constitutional claim possibly implicated by Plaintiff's allegations against Defendants are based on the Eighth Amendment. As a result, there is no evidence Defendants violated the Fourteenth Amendment.

Even if Plaintiff had proceeded against Defendants on a Fourteenth Amendment claim, summary judgment must enter in favor of Defendants as the requisite subjective intent has not been met, which is Plaintiff's burden.

It is well-settled that the Fourteenth Amendment claim mirrors the Eighth Amendment under the objective prong, *Darnell*, 849 F.3d at 30, but applies a less stringent subjective prong, *id.* at 32.

Defendants submit when their conduct is analyzed under the Fourteenth Amendment, there is no finding of a constitutional violation.

**i. <u>Butricks</u>**

The evidence is undisputed that Butricks became aware of the leak in Plaintiff's cell on May 20, 2020. ECF # 1, p. 12. Clearly whether analyzed under the subjective prong of either Eighth Amendment or Fourteenth Amendment, Plaintiff is unable to prove Butricks knew that he faced a substantial risk of injury and disregarded it by not taking action OR that Butrick's intentionally imposed the alleged condition and recklessly failed to act to mitigate the risk.

Under these facts, Defendants submit Butrick's conduct did not violate the Fourteenth Amendment.

**ii. <u>Carbone</u>**

Plaintiff alleges Carbone blatantly ignored his request for a reasonable accommodation. This is based solely on the claim that Plaintiff filed a Request for Reasonable Accommodation, which, presumably Carbone would have received and addressed as Carbone was the ADA Coordinator at Cheshire. In his declaration, Carbone recalled a brief conversation with Plaintiff in which a reasonable accommodation had been requested. ECF # 31-5, ¶ 14. No date is recalled by either Carbone or Plaintiff. (Interestingly, Plaintiff did not raise this encounter with Carbone in his Complaint.) Because Carbone was no longer the ADA Coordinator, which is admitted by Plaintiff in his Rule 56(a)(2), Carbone instructed Plaintiff to submit his request to the new coordinator. *Id.,* ¶ 15. Under the Eight Amendment analysis, Carbone does not have the requisite intent: while he knew about the leak, he also instructed Plaintiff on what to do to obtain a reasonable accommodation. Under the subjective prong of the Fourteenth Amendment, there is no evidence Carbone intentionally imposed the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed. Carbone appropriately responded to the question of whether Plaintiff could have a reasonable accommodation until the leak was fixed. As a result, Defendants submit Carbone's conduct did not violate the Fourteenth Amendment.

**iii. Rodriguez**

Rodriguez did not violate the Fourteenth Amendment. Plaintiff claims that on April 27, 2020, he asked Rodriguez to be moved to another handicap cell until the leak in his was fixed and that Rodriguez "denied Plaintiff's request verbally without explanation." ECF # 1, ¶ 14. Under the Eighth Amendment, Defendants submitted evidence that Rodriguez was no longer in the unit when such request was made by Plaintiff, ECF # 31-6, ¶ 13; Plaintiff admitted this fact in his Rule 56(a)(2) statement. Even if the encounter did happen, nowhere within the four corners of the complaint, nor within Plaintiff's declaration, ECF #39, p.7, does Plaintiff assert that Rodriguez denied the request intentionally to cause him harm or failed to act to mitigate the known risk because Rodriguez had the authority; subjection intent could be inferred. There is no evidence from the record that Rodriguez possessed culpable intent under the Eighth Amendment, let alone the Fourteenth Amendment. which the court could infer that Rodriguez's conduct was nothing more than negligent.

And because Plaintiff did not allege a violation of the Fourteenth Amendment on a claim of intentional discrimination or discriminatory intent, Defendants conduct, as alleged, also fails to implicate the Equal Protection Clause on the due process clause or any other violation of the Fourteenth Amendment.

Defendants submit there no evidence that any acted with the requisite subjective intent for a finding of a Fourteenth Amendment violation. As a result, Plaintiff cannot recover money damages for conduct that does not violate both the ADA and the Fourteenth Amendment. Tas the

requisite intent to find a Fourteenth Amendment violation has not been met, Defendants move this court to grant summary judgment in their favor.

Finally, because Plaintiff's Title II did not independently implicate a constitutional violation, some courts have continued to apply *Garcia*'s "discriminatory animus or ill will" requirement. Here, Defendants submit that under *Garcia*, Plaintiff has not established the requisite "discriminatory animus or ill will" requirement. As a result, Defendants move this court to grant summary judgment in their favor.

### D. **Insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congresses purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.**

Defendants' conduct does not violate Title II or the Fourteenth Amendment for reasons previously detailed, however, even if there were a question of fact as to whether there is a Title II violation, Defendants submit summary judgment can be granted in their favor for the reasons that follow.

When determining whether Congress has validly abrogated states' sovereign immunity from Title II claims that do not independently implicate a constitutional violation, some courts have continued to apply *Garcia*'s "discriminatory animus or ill will" requirement. As argued above, Plaintiff has failed to establish the requisite discriminatory animus or ill will requirement for Congress to abrogate the State's sovereign immunity from Title II claims that do not independently implicate a constitutional violation.

Others have applied the three-part test articulated in *City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), to determine whether, for the particular

Title II violation alleged, there is a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *See, e.g., Lenti v. Connecticut*, No. 20-cv-127, 2020 U.S. Dist. LEXIS 131189, at *21-31, 2020 WL 4275600, at *7-10 (D. Conn. July 24, 2020); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 322-24 (S.D.N.Y. 2007).

In making that determination, the court must first "identify with some precision the scope of the constitutional right at issue." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). Next, it must "examine whether [in enacting the ADA] Congress identified a history and pattern of unconstitutional discrimination by the States against the disabled." *See id.* at 368-69. Finally, it must consider "whether the rights and remedies created by the [ADA] are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress." *Goonewardena*, 475 F. Supp. 2d at 323 (citing *Garrett*, 531 U.S. at 372).

Courts have held that Title II implicates more constitutional rights than just the right at issue in this case. With respect to the first step, Defendants submit that the only constitutional right at issue is Plaintiff's right under the Eighth Amendment.

With respect to the second step, several courts have interpreted *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), as "conclusively establishing that Title II as a whole survives the historical inquiry under the second step of the *City of Boerne* test." *Wilke v. Cole*, 2014 U.S. Dist. LEXIS 174137, 2014 WL 7237019, at *7 (E.D. Wis. Dec. 17, 2014); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 487 (4th Cir. 2005); *Miller v. King*, 384 F.3d 1248, 1271 n.25 (11th Cir. 2004), *opinion vacated and*

*superseded by* 449 F.3d 1149 (11th Cir. 2006); *Cochran v. Pinchak*, 401 F.3d 184, 191 (3d Cir. 2005), *reh'g granted and judgment vacated by* 412 F.3d 500 (3d Cir. 2005); *see also Chase v. Baskerville*, 508 F. Supp. 2d 492, 500 (E.D. Va. 2007) (defining the inquiry broadly as "whether Title II represents a legislative response to a pattern of unconstitutional disability discrimination in public services, programs, or activities generally") (cleaned up) (quoting *Constantine*, 411 F.3d at 487). Indeed, Title II was "designed to address . . . a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities." *Lane*, 541 U.S. at 524-25 (listing areas such as voting, marrying, public education, the penal system, the administration of justice, jury service, unjustified commitment, abuse and neglect of those committed to state mental hospitals, and zoning decisions). Indeed the second step has been met.

However, Plaintiff's claim fails at step three. The Supreme Court has cautioned:

> While § 5 [of the Fourteenth Amendment] authorizes Congress to enact reasonably prophylactic remedial legislation, the appropriateness of the remedy depends on the gravity of the harm it seeks to prevent. Difficult and intractable problems often require powerful remedies, but it is also true that strong measures appropriate to address one harm may be an unwarranted response to another, lesser one.

*Lane*, 541 U.S. at 523-24 (cleaned up).

Numerous courts evaluating Title II ADA claims by state prisoners have found that the prisoners' claims "fail[] the third step of the *City of Boerne* test because," in that context, Title II "is so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Wilke*, 2014 U.S. Dist. LEXIS 174137, 2014 WL 7237019, at *7 (cleaned up) (quoting *City of Boerne*, 521 U.S. at 532);

*see also Phelan v. Thomas*, 2017 U.S. Dist. LEXIS 17606, 2017 WL 519246, at *5 (N.D.N.Y. Feb. 8, 2017); *Baskerville*, 508 F. Supp. 2d at 506; *Belk v. Smith*, 2013 U.S. Dist. LEXIS 139584, 2013 WL 5430426, at *8-9 (M.D.N.C. Sept. 27, 2013). Some of those courts emphasize the broad scope of Title II of the ADA. *See, e.g., Wilke*, 2014 U.S. Dist. LEXIS 174137, 2014 WL 7237019, at *7 (noting that "Title II's prophylactic demand for reasonable accommodation requires far more than does the Constitution" because it "prohibits far more state conduct and in many more areas of prison administration than conceivably necessary to enforce any relevant constitutional rights") (cleaned up). Many of those courts also point out that federal courts should be especially cautious before interfering with the administration of a State's prison system. *See, e.g., Belk*, 2013 U.S. Dist. LEXIS 139584, 2013 WL 5430426, at *8 (citing, *inter alia, Turner v. Safley*, 482 U.S. 78, 85, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Woodford v. Ngo*, 548 U.S. 81, 94, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *Preiser v. Rodriguez*, 411 U.S. 475, 491-92, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)); *Shaw v. Pa. Dep't of Corr.*, 2018 U.S. Dist. LEXIS 217016, 2018 WL 6831148, at *6 (W.D. Pa. Dec. 28, 2018); *Meeks v. Schofield*, 10 F. Supp. 3d 774, 797 (M.D. Tenn. 2014); *see also Reynolds v. Cook*, 2020 U.S. Dist. LEXIS 40252, 2020 WL 1140885, at *13 (D. Conn. Mar. 9, 2020).

Here, Plaintiff is a prisoner confined to the DOC. As alleged in the complaint, and Defendants do not dispute, Plaintiff is an inmate with a qualified disability who has been provided with a reasonable accommodation by way of a walking claim and a handicap accessible cell.

The conduct at issue here is whether Defendants violated Plaintiffs Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment, which forbids cruel

and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). In order to constitute an Eighth Amendment violation, however, a condition must be "sufficiently serious" such that it results in a deprivation of "the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted)

Conditions are objectively serious enough to implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The deprivation must be significant; although the Constitution does not permit "inhumane" prisons, nor does it "mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citation omitted). There is no bright-line rule or "static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). The length of time an inmate is subjected to the condition is relevant in determining whether it is sufficiently serious. *See Rhodes*, 452 U.S. at 373 ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."). Generally, a temporary or limited exposure to a condition does not amount to an Eighth Amendment violation. *White v. Smith*, No. 9:17-CV-1094, 2021 U.S. Dist. LEXIS 199150, 2021 WL 5989600, at *8 (N.D.N.Y. Oct. 15, 2021); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 374 (S.D.N.Y. 2018) ("Deprivations of such mild duration and severity do not rise

to the level of being considered cruel and unusual treatment under the Constitution."); *Ford v. Phillips*, No. 05 Civ. 6646, 2007 U.S. Dist. LEXIS 25226, 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) (holding that, as a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment)..

Plaintiff claims a leak stemmed from the sink/toilet in his cell. However, Plaintiff does not offer any facts regarding the frequency of the leak nor its severity. This alone is insufficient to satisfy the objective prong. He describes only that the sink/toilet leaked on April 27, 2020 and remained leaking until May 19, 2020 when it was finally fixed. While he does claim that the leak presented a risk to his health or safety because he walked with a cane, he does not provide specific facts describing circumstances, nature, severity and duration of the leak therefore it would be impossible for this court to determine whether the risk posed by the it is grave enough to constitute cruel and unusual punishment. And he does not describe how a leaky sink alone presents a risk to his health or safety. *See Johnson*, 217 F.3d at 731; *see also Wash. v. Atchley*, No. 21-cv-01584-JD, 2021 U.S. Dist. LEXIS 102634, 2021 WL 2207428, at *2 (N.D. Cal. June 1, 2021) ("To state a cognizable claim for relief, there must be a confluence of conditions such that the flooded cell posed a serious, unavoidable threat to plaintiff's safety."). Plaintiff's conclusory allegations are insufficient. *See Iqbal*, 556 U.S. at 678.

Further, the court has found that Plaintiff has failed to allege specific facts regarding Defendants individual, personal knowledge of the leak. *Farmer*, 511 U.S. at 837; see also *Shannon v. Vannoy*, 2016 U.S. Dist. LEXIS 51478, 2016 WL 1559583, *1 (M.D. La. Apr. 18, 2016) (granting defendants' motion to dismiss where plaintiff claimed defendants were

deliberately indifferent to a known safety risk where they knew of but failed to repair a hole in the ceiling of his cell that leaked every time it rained and finding that plaintiff's claim was nothing more than a negligence claim and not cognizable under § 1983). Moreover, Courts considering similar claims have held that water on the cell floor does not support a claim for unconstitutional conditions of confinement. *See, e.g., Farray v. Green*, No. 12-CV-4717(ARR)(LB), 2013 U.S. Dist. LEXIS 149672, 2013 WL 5676315, at *3 (E.D.N.Y. Oct. 16, 2013) ("ceiling leaks causing a wet floor are not a 'sufficiently serious' risk to state a plausible constitutional claim"); *Simmons v. Schriro*, No. 09 Civ. 9598(WHP), 2010 U.S. Dist. LEXIS 83638, 2010 WL 3238943, at *2 (S.D.N.Y. Aug. 16, 2010) (holding that slippery floor caused by leak does not pose substantial risk of serious harm); *Covington v. Westchester Cty. Dep't of Corr.*, No. 06 Civ. 5369(WHP), 2010 U.S. Dist. LEXIS 11020, 2010 WL 572125, at *8 (S.D.N.Y. Jan. 25, 2010) (holding that a puddle on the floor of a prisoner's cell does not meet the objective component of the deliberate indifference standard).

Finally, Defendants submit that there is no claim of intentional discrimination or discriminatory intent such as to implicate or establish a Fourteenth Amendment equal protection violation or any other Fourteenth Amendment violation. Therefore, Defendants move this Court to grant summary judgment in their favor as Defendants are entitled to Eleventh Amendment immunity from Plaintiff’s Title II ADA claim.

**E. Was there a factual dispute as to whom Plaintiff told about the maintenance issue in his cell, and when he did so.**

Defendants submit there are factual disputes as to whom Plaintiff told about the maintenance issue in his cell and when he did so. Despite this, however, Defendants move this Court to grant summary judgment as Plaintiff has failed to meet his burden of proof.

First, Plaintiff claims that on April 27. 2020, he wrote a request to maintenance demanding that the leak in his cell be fixed. ECF # 1, ¶ 11; *Id.,* p. 14. Neither Plaintiff nor DOC were unable to provide evidence that the written request was received. Plaintiff states he did not get a response, Id., ¶12. However, to dispute a request was ever received, DOC submitted the declaration by Maintenance Supervisor Wayner. ECF # 31-2, ¶ 55. In addition, DOC provided work orders (Attachment C) that reflect the number of times requests were made for repair of a leak in Plaintiff's cell and maintenance response. For example, custody requested repairs on January 14, 2020, January 15, 2020, January 23, 2020, May 12, 2020 and May 18, 2020. ECF # 31-2, ¶¶ 57 – 63. Repairs were made either the same day or within two days of the request. *Id.*

Second, Plaintiff's claims he told Rodriguez about the leak on April 27, 2020. Defendants dispute Rodriguez was in Plaintiff's unit on April 27, 2020 for this conversation to have taken place. ECF # 31-6, ¶ 13 In his Rule 56(a)(2) statement, Plaintiff admitted that Rodriguez was no longer assigned to the unit on April 27, 2020. ECF #38, ¶ 44. Indeed, there is no genuine issue of material fact that Rodriguez was no longer assigned to the unit on April 27, 2020 when Plaintiff has alleged to have informed Rodriguez of the leak in his cell and made a request for reasonable accommodation until the leak was fixed.

Defendants move this court to grant summary judgment in their favor for lack of evidence that DOC was aware of a maintenance need in Plaintiff's cell.

### F. <u>**Was Plaintiff "denied the opportunity to participate in or benefit from the prison's services, programs, or activities, or [whether] the prison otherwise discriminated against him by reason of his disability."**</u>

Plaintiff was not denied the opportunity to participate in or benefit from the prison's services, programs, or activities, and it did not otherwise discriminate against him by reason of his disability. Plaintiff has failed to submit any evidence that he was denied any opportunity to participate in or benefit from the services, programs or activities offered by the DOC or that it otherwise discriminated against him by reason of his disability.

"Access to prescription medications is part of a prison's medical services and thus is one of the 'services, programs, or activities' covered by the ADA." *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006) (citing *United States v. Georgia*, 546 U.S. 151, 157, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006)).

Plaintiff claims he was denied the opportunity to participate in medical call, a service provided by DOC in which inmates receive prescribed medications that must be observed when ingesting. However, during the period when the sink did not leak in his cell, DOC records reflect Plaintiff refused medication. And, during the period of time when the sink leaked, DOC records reflect Plaintiff received medication.

A prison's provision of accessible bathroom facilities is a "service, program, or activity" within the meaning of the ADA. *See, e.g. Cabassa v. Oshier*, 2012 U.S. Dist. LEXIS 187082, 2012 WL 7784980, at *18 (N.D.N.Y. Oct. 30, 2012) ("Cabassa alleged that he was denied the use

of accommodating showers and transfer to a facility where accommodations are more readily available, both of which constitute a denial of benefits of services or programs by the state."), *report and recommendation adopted in part, rejected in part on other grounds*, 2013 U.S. Dist. LEXIS 39279, 2013 WL 1183296 (N.D.N.Y. Mar. 21, 2013).

Here, however, there is absolutely no evidence that Plaintiff was denied access to toilets. In fact, Plaintiff claims he fell when he attempted to use the bathroom on May 15, 2020. ECF # 1, ¶ 20. DOC provided Plaintiff with a handicap-accessible cell that contained a toilet. ECF # 1, ¶¶ 10 – 22. Plaintiff was not denied access to toilets for this court to find Defendants violated Title II.

Plaintiff claims he was denied the opportunity to participate in medical call, a service provided by DOC in which inmates receive prescribed medications that must be observed when ingesting. ECF # 1, ¶ 20, ¶ 29. DOC maintains records that reflect date and time observation therapy medications are issued to Plaintiff. *See* Attachment D, Medical Records Filed Under Seal, pp. 111 – 122. According to DOC records, entitled Fusion EMAR, a medication is prescribed to Plaintiff, via direct observation, twice a day: 1:00 p.m. and 9:00 p.m. The "Fusion EMAR" record medication that has not been administered on a particular day and time is coded with "N", not administered. *Id.* Regardless of whether the sink leaked or not, the "Fusion EMAR" report reflects medication was prescribed and observed, and sometimes not administered for various reasons. The "Fusion EMAR" reflects that Plaintiff had the opportunity to participate in medical services offered to him through DOC and DOC provided Plaintiff with a

reasonable accommodation so that he could participate in medical services. Plaintiff was not denied access to medication for this court to find Defendants violated Title II.

As an inmate, DOC maintains records of treatment provided to Plaintiff. *See* Attachment D, pp. 1 – 110. DOC medical records reflect treatment provided by nursing, medical doctors and specialty appointments at UCONN, an outside medical provider. At all times referenced in the Complaint, Plaintiff received medical treatment regardless of whether a leak existed in his cell. Plaintiff was not denied access to medical teratment for this court to find Defendants violated Title II.

Plaintiff carries the burden of proof that he was denied the opportunity to participate in DOC's services, programs and activities. The record has established Plaintiff has failed to provide any evidence to support the third prong of his ADA claim against Defendants. Therefore, Defendants move this Court to grant summary judgment in their favor on Plaintiff's ADA claim.

## VII. CONCLUSION

Defendants move this Court to grant summary judgment in their favor as: 1) Defendants alleged conduct did not violate Title II of the ADA; 2) Defendants alleged conduct did not violate the Fourteenth Amendment; 3) there are no genuine issues of material facts as to whom Plaintiff told about the maintenance issue in his cell and when he did so; 4) Defendants did not deny Plaintiff the opportunity to participate in or benefit from Department of Correction services, programs or activities nor did it otherwise discriminate against Plaintiff by reason of his disability; and 5) Defendants are entitled to Eleventh Amendment immunity on Plaintiff's claim for money damages under Title II of the Americans with Disabilities Act (ADA).

DEFENDANTS,
Butricks, Carbone and Rodriguez

WILLIAM TONG
ATTORNEY GENERAL

BY /s/DeAnn S. Varunes
DeAnn S. Varunes
Assistant Attorney General
Fed. Bar No. ct25903
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Telephone No. (860) 808-5450
Fax No. (860) 808-5591
E-mail: deann.varunes@ct.gov

**CERTIFICATION**

I hereby certify that on February 10, 2025, copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/DeAnn S. Varunes
DeAnn S. Varunes
Assistant Attorney General