**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JORGE SANCHEZ,<br>*Plaintiff,*<br><br>v.<br><br>KENNETH BUTRICKS, ET AL.<br>*Defendants.* | No. 3:20-cv-1229 (OAW) |

**PLAINTIFF JORGE SANCHEZ'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jorge Sanchez ("Mr. Sanchez"), through counsel, submits this opposition to Defendants' Motion for Summary Judgment. ECF No. 68. The Court should deny Defendants' Motion for two reasons. First, Defendants have not met their burden of showing there are no genuine issues of material fact as to Mr. Sanchez's claim under Title II of the Americans with Disabilities Act ("ADA"). Second, Defendants have not met their burden of proving they are entitled to Eleventh Amendment immunity.

## BACKGROUND

Mr. Sanchez was injured after a fall in his cell at Cheshire Correctional Institution ("Cheshire") after Cheshire failed to fix a leak despite Mr. Sanchez's reasonable request for an accommodation. ECF No. 60, Attachment 2, ¶¶ 18-28. Mr. Sanchez is a qualified prisoner with a disability under Title II of the ADA and already walked with a cane before the accident. ECF No. 60, Attachment 2, ¶¶ 6-7. Not only did the standing water in his cell deter him from leaving his cell for essential medication, meals, and recreation, but also the fall from the leak exacerbated his pre-existing injury. ECF No. 60, Attachment 2, ¶¶ 18-20, 38. Mr. Sanchez brought suit against Defendants alleging violations of Title II of the ADA and the Eighth Amendment. ECF No. 1.

After the Court's initial grant of summary judgment to Defendants, the Second Circuit reversed, holding that Mr. Sanchez had adduced enough evidence to survive a summary judgment motion on his *prima facie* claim for a violation of Title II of the ADA. ECF Nos. 42 & 90. In remanding the case to the Court, the Second Circuit directed the Court to consider whether Defendants are entitled to Eleventh Amendment sovereign immunity. ECF No. 60.

Plaintiff incorporates herein the facts asserted in his Rule 56(a)(1) and 56(a)(2) Statements. ECF No. 70, Attachment 2 and 56(a)(2) Statement filed contemporaneously with this brief.

## LEGAL STANDARD

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of showing he is entitled to summary judgment. *See Gilead Comm. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 65 (D. Conn 2019). A dispute of fact will be considered "material" if a reasonable juror could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must then put forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Gilead*, 432 F. Supp. 3d at 66 (citation omitted). The court must view any inferences drawn from the facts in the light most favorable to the non-moving party. *Id.* As such, if Mr. Sanchez can show that there are disputed issues of fact, the Court should deny Defendants' motion.

## ARGUMENT

Mr. Sanchez has adduced sufficient evidence to survive summary judgment on the basic elements of his Title II claim. In addition, Eleventh Amendment sovereign immunity does not apply because Cheshire's conduct violated Title II, violated the Fourteenth Amendment, and

because Congress's abrogation of sovereign immunity with respect to such conduct is valid. ECF No. 60.

**I. Mr. Sanchez Has Met His Evidentiary Burden for the ADA Claim.**

To prove his Title II claim, Mr. Sanchez must show (1) that he is a "qualified individual" with a disability; (2) that Cheshire is a public entity subject to Title II; and (3) that Mr. Sanchez was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by reason of his disability. *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004). All parties agree that Mr. Sanchez has met the first and second elements. And there can be no reasonable dispute that he has met the third element, as well.

With regard to the third element, Plaintiff has adduced significant evidence that he was denied the opportunity to participate in the prison's services, programs, and activities. Mot. at 31. First, he submitted a signed declaration stating that he was deterred from leaving his cell to participate in medication calls, meals, recreation, and work. ECF No. 70, Attachment 2 ¶ 19. Second, Defendants concede that accessible bathroom facilities are a "service, program, or activity" within the meaning of the ADA, but then wrongly assert that he "was not denied access to toilets" because he was provided with a "cell that contained a toilet." Mot. at 34-35. If, as here, a cell "contains" a toilet, but the Plaintiff cannot safely access it, then he does not have the meaningful access that the law demands.

Defendants do no better with respect to their argument that they were not aware of Mr. Sanchez's need for an accommodation. Indeed, Defendants essentially concede as much. *See* Mot. at 33 ("Defendants submit there are factual disputes as to whom Plaintiff told about the maintenance issue in his cell and when he did so."). Defendants argue despite this that somehow

"Plaintiff has failed to meet his burden of proof," *id.*, but Defendants' citations to disputed evidence only prove Mr. Sanchez's point. Defendants submit a declaration to argue that Mr. Sanchez never requested that the leak be fixed on April 27, 2020. Mot. at 33. But Mr. Sanchez submitted documentary evidence of such a request, which stated "my toilet has been spilling water from the bottom all week long, can you please send someone to fix it." ECF No. 70, Attachment 2 ¶ 21. This is the very definition of a disputed issue of fact. Mr. Sanchez does not dispute that there were *other* requested repairs on different dates, as noted by Defendants, but these have nothing to do with the April 27 request. Mot. at 33. Mr. Sanchez separately asserts that, in addition to the April 27 maintenance request, he asked Defendant Rodriguez whether Sanchez could be moved to a different cell. ECF No. 70, Attachment 2 ¶ 23. Although Defendants concede that an oral request of this sort can be grounds for a reasonable accommodation, Mot. at 22, they assert that it could not have happened because Rodriguez was assigned to a different unit at Cheshire. Of course, he still worked at Cheshire and easily could have interacted with Sanchez again. As the Second Circuit noted, *see* Summary Order at 5-6, ECF No. 90-1, Case No. 22-2923 (June 10, 2024), this is a fact issue for a jury to decide. Third, Sanchez submitted a work order on May 12, 2020, which is not marked completed until October 29, 2020 (after Mr. Sanchez's accident). Sanchez affidavit, at ¶ 13. Finally, Defendant Carbone has sworn under oath that Mr. Sanchez told him of the leak and requested an accommodation. ECF No. 70, Attachment 2, Ex. C ¶ 14. In short, Defendants cannot prove that Mr. Sanchez definitively did not ask for the leak to be repaired or did not otherwise ask for a reasonable accommodation.

## II. Defendants Are Not Entitled to Sovereign Immunity.

To determine whether sovereign immunity applies, courts utilize the three-element test in *United States v. Georgia,* 546 U.S. 151, 159. As to the first element (the aspects of the State's

conduct that violated Title II), Mr. Sanchez has set forth ample evidence that he was denied a reasonable accommodation (by either fixing the leak or moving him to another dry cell), which deprived him of prison services and activities. *See* ECF No. 70, Attachment 2, Exhibit D (Sanchez's signed declaration that he asked at least three Cheshire officials to fix the leak or to move him to a different cell).

Second, with respect to what extent such conduct also violates the Fourteenth Amendment, Defendants are incorrect that "the only constitutional claim possibly implicated by Plaintiff's allegations against Defendants are based on the Eighth Amendment." Mot. at 23. Mr. Sanchez argues that, under the Fourteenth Amendment, his substantive due process rights also were violated because of his total reliance on Cheshire for basic services. ECF No. 70, Attachment 1. Moreover, he has adduced sufficient evidence that a jury could find that Defendants "intended to injure" him in some way "unjustifiable by any government interest." *Matzell v. Annuci*, 64 F.4th 425, 436 (2d Cir. 2023) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Defendants were aware of Mr. Sanchez's preexisting injury, which predated his incarceration and numerous staff knew that Mr. Sanchez ambulated only with the assistance of a cane. ECF No. 70, Attachment 2 ¶ 6. Mr. Sanchez has offered evidence that Cheshire had to address work orders for leaks in Mr. Sanchez's consistently throughout 2019 and 2020 and were aware on this occasion that there was a leak in his cell. ECF No. 70, Attachment 2 ¶¶ 17-25. Mr. Sanchez has also offered evidence that the leak was clearly located in front of his door and was so severe it deterred him from leaving his cell. ECF No. 70, Attachment 2 ¶¶ 18-20. At a minimum, Mr. Sanchez has created a fact issue as to which defendants knew what and when. Thus, a jury could find that Mr. Sanchez's liberty interest in accessing a toilet and taking part in prison services was violated. In addition, a jury could find that the Defendants intended to injure him.

Third, even if the conduct does not violate the Fourteenth Amendment, sovereign immunity does not protect Defendants because Congress validly abrogated it for claims of this sort. For their part, Defendants argue that it is "unclear" whether Congress has validly abrogated their immunity, Mot. at 14, although they admit that "Congress wanted the ADA's Title II to abrogate Eleventh Amendment immunity," *id.* at 16. Defendants devote the bulk of their Eleventh Amendment discussion to *Garcia v. State University of N.Y. Health Sciences Center of Brooklyn*, but that case is inapplicable here. 280 F.3d 98 (2d Cir. 2001). *Garcia*'s "discriminatory animus" standard applies to Equal Protection claims, which are not raised by Mr. Sanchez. Indeed, the Second Circuit in *Bolmer v. Oliveira* confined *Garcia*'s discriminatory animus requirement to Equal Protection claims. 594 F.3d 134 (2d Cir. 2010). In *Bolmer*, the court analyzed a substantive due process claim in conjunction with Title II of the ADA, finding that *Garcia's* discriminatory animus did not apply because the tests for Equal Protection violations and the Substantive Due Process violation alleged were distinct. *Id.* at 148.

Rather than the inapplicable *Garcia* test, the Court should use the *City of Boerne* framework, as applied by the Second Circuit in *T.W. v. New York State Board of Law Examiners*, 110 F.4th 71 (2d Cir. 2024); *see also City of Boerne v. Flores*, 521 U.S. 507 (1997). Defendants concede that the first two elements of the framework apply. *See* Mot. at 27-28.[1] So, too, does the third, which is an analysis of whether the rights and remedies created by the statute are congruent and proportional both to the constitutional rights they purport to enforce and to the record of

[1] While Defendants contend that the only constitutional right at issue in this case is Plaintiff's rights under the Eighth Amendment, Mot. at 27, Congress sought to protect individuals from irrational disability discrimination (including with regard to violations of substantive due process) when it enacted Title II of the ADA, as made clear in *Tennessee v. Lane*. 541 U.S. at 522. The second step of the *Boerne* test "has been met" because of the pattern of unconstitutional disability discrimination Congress identified in enacting the ADA. Mot. at 28 (noting that " several courts have interpreted *Tennessee v. Lane* . . . as 'conclusively establishing that Title II as a whole survives the historical inquiry under the second step of the *City of Boerne* test.'") (citations omitted)); *see also Lane*, 541 U.S. at 524-56.

violations adduced by Congress. *See Boerne*, 521 U.S. at 520. Defendants wrongly focus on the narrow specifics of the alleged violation of rights. Rather, far more generally, the "particular right . . . at issue" here is the unequal treatment of disabled persons by state-run prisons. *T.W.*, 110 F.4th at 83. Courts consistently analyze this third element through this same sort of general framework. In *Tennessee v. Lane*, when examining whether Congress abrogated sovereign immunity under the ADA with respect to courtroom accessibility under *Boerne*'s third prong, the Supreme Court broadly examined the "class of cases implicating the accessibility of judicial services." 541 U.S. 509, 531 (2004). Rather than focusing on the specific facts of the case in front it (access to court), the Court considered the broader context (general accessibility of services).[2] *See id.* The Second Circuit in *T.W.* undertook a similar analysis, analyzing the general right "as applied to professional licensing of disabled individuals," rather than narrowing its review to the plaintiff's particular factual circumstances. 110 F.4th at 89.

The cases cited by Defendants view the issue too narrowly and are not consistent with Supreme Court guidance. *See generally* Mot. at 20. In any event, the particular conduct at issue here – failing to fix a leak, time and again, such that a disabled inmate cannot use the toilet or safely leave his cell – is undoubtedly within the ambit of Title II and remedying it is congruent and proportional to the record of violations adduced by congress. After a long history of disability discrimination in the prison context, Congress enacted Title II of the ADA. *See Tennessee v. Lane*, 541 U.S. at 524-26. While Defendants assert that Title II is far more demanding than is the Constitution, that is certainly not the case in the context of the particular violations at issue here.

---

[2] The Supreme Court in *Nevada Department of Human Resources v. Hibbs* also broadly analyzed the class constitutional harms Congress intended to remedy by enacting the Family and Medical Leave Act of 1993. 538 U.S. 721 (2003). By doing so, it held that Congress validly abrogated Eleventh Amendment immunity when it passed the FMLA. *Id.* at 740. When it assessed the "congruence and proportionality" of the remedy to the harm, it broadly examined the aim of the FMLA, to be free from gender-based discrimination in the workplace, rather than the specific facts of the case. *Id.* at 728.

Indeed, Title II is not overly demanding of prisons. Under Title II, a public entity is required to provide accommodations for an individual's disability only so long as they do not "impose an undue financial or administrative burden … or effect a fundamental alteration in the nature of the service." *Tennessee v. Lane*, 541 U.S. at 532 (*citing* 28 C.F.R. §§ 35.150(a)(2), (a)(3)). Title II mandates only that a prison be "readily accessible to and usable by individuals with disabilities" when it provides services, programs, or activities to its inmates. 28 C.F.R. § 35.150(a). Consequently, Title II governs a limited range of actions. Additionally, the Prison Litigation Reform Act of 1995 ("PLRA") creates additional barriers for prisoners to file lawsuits so as to not impede on the state's administration of its prison system. Prisoners must exhaust administrative remedies first, and prisoners are barred from filing more than three lawsuits deemed frivolous, malicious, or which fail to state a claim. 42 U.S.C. § 1997e(a); 28 U.S.C. § 1915(g). The PLRA also limits a prisoner's ability to sue over prison conditions. 18 U.S.C. § 3626 (Prospective relief with respect to prison conditions must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation . . . ."). In short, the remedies available under Title II (particularly for this alleged conduct) are not far broader than—and indeed are proportional and congruent to—those protected Constitutionally.

For all these reasons, Defendants are not entitled to sovereign immunity under the Eleventh Amendment with respect to Mr. Sanchez's Title II claim under the ADA.

**CONCLUSION**

WHEREFORE, based on the reasons set forth, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

**TROUTMAN PEPPER LOCKE, LLP**

By: /s/ *Daniel Cohen*
Daniel W. Cohen
Bar No. CT 30467
Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6256
Dan.cohen@troutman.com

*Counsel for Plaintiff Jorge Sanchez*

**CERTIFICATION**

I hereby certify that on March 12, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ *Daniel Cohen*
Daniel W. Cohen